IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **CARLOS H. ALMEIDA,**<br><br>                              Petitioner,<br><br>        **v.**<br><br><br>**GREG LEWIS, Warden,**<br><br>                        Respondent. | **Case No. 1:12-cv-00793 MJS (HC)**<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DECLINING TO ISSUE CERTIFICATE OF APPEALABILITY** |

Petitioner is a state prisoner proceeding *pro se* with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Respondent is represented by Ivan P. Marrs of the office of the California Attorney General. Both parties have consented to Magistrate Judge jurisdiction under 28 U.S.C. § 636(c). (ECF Nos. 8, 28.)

## I.    PROCEDURAL BACKGROUND

Petitioner is currently in the custody of the California Department of Corrections pursuant to a judgment of the Superior Court of California, County of Tulare, following his conviction upon pleading, on June 4, 2008, no contest to assault with a deadly weapon and various enhancements. (Clerk's Tr. at 162.) On August 13, 2008, the trial court sentenced Petitioner to serve a determinate term of fifteen (15) years in jail. (Id.)

Petitioner filed a direct appeal with the California Court of Appeal, Fifth Appellate

1   District, on December 3, 2008. (Lodged Doc. 5.) On April 21, 2009, the court reversed

2   the judgment and remanded the matter to the trial court for reconsideration of

3   Petitioner's motion to withdraw his plea. (Lodged Doc. 8.) After holding a two day

4   hearing, the superior court denied the motion to withdraw the plea, and reinstated the

5   original sentence. (Lodged Doc. 11 at 2-3.) Petitioner again appealed, and the Court of

6   Appeal affirmed the judgment on July 8, 2010. (Lodged Docs. 10-11.)

7       Petitioner also pursued post-conviction relief in the form of petitions for writ of

8   habeas corpus. On February 11, 2010, Petitioner filed a petition for writ of habeas

9   corpus with the Tulare County Superior Court. (Lodged Doc. 12.) It was denied in a

10   reasoned decision on March 18, 2010. (Lodged Doc. 13.) On May 7, 2010, Petitioner

11   filed a petition for writ of habeas corpus with the California Court of Appeal. (Lodged

12   Doc. 14.) The petition was denied. (Lodged Doc. 15.) On November 24, 2010, Petitioner

13   filed a petition for writ of habeas corpus with the California Supreme Court. (Lodged Doc.

14   16.) The petition was denied on May 18, 2011. (Lodged Doc. 17.)

15       Petitioner then sought another round of post-conviction relief. On March 1, 2011,

16   Petitioner filed a petition for writ of habeas corpus with the Tulare County Superior Court.

17   (Lodged Doc. 18.) It was denied in a reasoned decision on March 3, 2011. (Lodged Doc.

18   19.) On October 20, 2011, Petitioner filed a second petition for writ of habeas corpus

19   with the Tulare County Superior Court. (Lodged Doc. 20.) It was denied in a reasoned

20   decision on October 28, 2011. (Lodged Doc. 21.) On November 30, 2011, Petitioner filed

21   a petition for writ of habeas corpus with the California Court of Appeal. (Lodged Doc. 22.)

22   The petition was denied on May 18, 2012. (Lodged Doc. 23.) On December 29, 2011,

23   Petitioner filed a petition for writ of habeas corpus with the California Supreme Court.

24   (Lodged Doc. 24.) The petition was denied on April 18, 2012. (Lodged Doc. 24.)

25       Petitioner filed the instant federal habeas petition on May 14, 2012. (Pet., ECF

26   No. 1.) In his petition, Petitioner presents four claims, alleging (1) that his attorney was

27   ineffective and improperly advised him to accept the guilty plea, (2) that trial counsel was

28   ineffective for failing to properly conduct an investigation, (3) that Petitioner was

1  physically coerced into making his confession, and (4) that the witnesses identification of

2  Petitioner was the result of a physically coerced confession. (Id.)

3       Respondent filed an answer to the petition on October 12, 2012, and Petitioner

4  filed a traverse on April 18, 2013. (Answer & Traverse, ECF Nos. 22, 34.)

5  **II.    STATEMENT OF THE FACTS**[1]

6       On February 22, 2008, a City of Tulare police officer, investigating a
        report of a stabbing near a high school, met with Pedro A. (Pedro), who
7       had suffered a knife wound in his left side, and Vincente R. (Vincente).
        Vicente told the officer the following: He, Pedro, and three other persons,
8       all of whom were "affiliated" with the "Sureno" gang, were walking near the
        school when a group of "Nortenos," including appellant, approached.
9       Vicente and his companions tried to run away, but appellant caught up
        with them, at which point Pedro and appellant "engaged in a physical
10      fight." During the fight, appellant "pulled out a knife and stabbed [Pedro] in
        the side."

11
        Other officers saw appellant at a nearby fast food restaurant and
12      detained him. "Several witnesses positively identified [appellant] as the
        subject who stabbed [Pedro]." Appellant initially denied any involvement,
13      but "when told he was caught on video tape[,] [he] eventually admitted
        stabbing the victim."
14
15  People v. Almeida, 2010 Cal. App. Unpub. LEXIS 5061, 4-5 (Cal. App. 5th Dist. July 2,

    2010).
16
17  **III.   GOVERNING LAW**

        **A.    Jurisdiction**
18
19       Relief by way of a petition for writ of habeas corpus extends to a person in

20  custody pursuant to the judgment of a state court if the custody is in violation of the

21  Constitution or laws or treaties of the United States.  28 U.S.C. § 2254(a); 28 U.S.C. §

22  2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 fn.7 (2000).  Petitioner asserts that he

23  suffered violations of his rights as guaranteed by the U.S. Constitution.  In addition, the

24  conviction challenged arises out of the Tulare County Superior Court, which is located

25  within the jurisdiction of this court.  28 U.S.C. § 2241(d); 2254(a). Accordingly, the Court

26  has jurisdiction over the action.

27  ---
    [1] The Fifth District Court of Appeal's summary of the facts in its July 2, 2010 opinion is presumed correct.
    28 U.S.C. § 2254(e)(1).

28

B.    **Legal Standard of Review**

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment.  Lindh v. Murphy, 521 U.S. 320, 326 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997). The instant petition was filed after the enactment of the AEDPA; thus, it is governed by its provisions.

Under AEDPA, an application for a writ of habeas corpus by a person in custody under a judgment of a state court may be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a); Williams v. Taylor, 529 U.S. at 375 n. 7 (2000). Federal habeas corpus relief is available for any claim decided on the merits in state court proceedings if the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

1.    Contrary to or an Unreasonable Application of Federal Law

A state court decision is "contrary to" federal law if it "applies a rule that contradicts governing law set forth in [Supreme Court] cases" or "confronts a set of facts that are materially indistinguishable from" a Supreme Court case, yet reaches a different result." Brown v. Payton, 544 U.S. 133, 141 (2005) citing Williams, 529 U.S. at 405-06. "AEDPA does not require state and federal courts to wait for some nearly identical factual pattern before a legal rule must be applied. . . . The statue recognizes . . . that even a general standard may be applied in an unreasonable manner" Panetti v. Quarterman, 551 U.S. 930, 953 (2007) (citations and quotation marks omitted).  The "clearly established Federal law" requirement "does not demand more than a 'principle' or 'general standard.'" Musladin v. Lamarque, 555 F.3d 830, 839 (2009).  For a state decision to be an unreasonable application of clearly established federal law under §

4

1  2254(d)(1), the Supreme Court's prior decisions must provide a governing legal principle

2  (or principles) to the issue before the state court.  Lockyer v. Andrade, 538 U.S. 63, 70-

3  71 (2003).  A state court decision will involve an "unreasonable application of" federal

4  law only if it is "objectively unreasonable."  Id. at 75-76, quoting Williams, 529 U.S. at

5  409-10; Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002). In Harrington v. Richter, the

6  Court further stresses that "an *unreasonable* application of federal law is different from

7  an *incorrect* application of federal law."  131 S. Ct. 770, 785 (2011), (citing Williams, 529

8  U.S. at 410) (emphasis in original).  "A state court's determination that a claim lacks

9  merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the

10  correctness of the state court's decision."  Id. at 786 (citing Yarborough v. Alvarado, 541

11  U.S. 653, 664 (2004)).  Further, "[t]he more general the rule, the more leeway courts

12  have in reading outcomes in case-by-case determinations."  Id.; Renico v. Lett, 130 S.

13  Ct. 1855, 1864 (2010). "It is not an unreasonable application of clearly established

14  Federal law for a state court to decline to apply a specific legal rule that has not been

15  squarely established by this Court."  Knowles v. Mirzayance, 129 S. Ct. 1411, 1419

16  (2009), quoted by Richter, 131 S. Ct. at 786.

17            2.    Review of State Decisions

18       "Where there has been one reasoned state judgment rejecting a federal claim,

19  later unexplained orders upholding that judgment or rejecting the claim rest on the same

20  grounds."  See Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991).  This is referred to as the

21  "look through" presumption.  Id. at 804; Plascencia v. Alameida, 467 F.3d 1190, 1198

22  (9th Cir. 2006).  Determining whether a state court's decision resulted from an

23  unreasonable legal or factual conclusion, "does not require that there be an opinion from

24  the state court explaining the state court's reasoning." Richter, 131 S. Ct. at 784-85.

25  "Where a state court's decision is unaccompanied by an explanation, the habeas

26  petitioner's burden still must be met by showing there was no reasonable basis for the

27  state court to deny relief."  Id. ("This Court now holds and reconfirms that § 2254(d) does

28  not require a state court to give reasons before its decision can be deemed to have been

1    'adjudicated on the merits.'").

2        <u>Richter</u> instructs that whether the state court decision is reasoned and explained,

3    or merely a summary denial, the approach to evaluating unreasonableness under §

4    2254(d) is the same: "Under § 2254(d), a habeas court must determine what arguments

5    or theories supported or, as here, could have supported, the state court's decision; then

6    it must ask whether it is possible fairminded jurists could disagree that those arguments

7    or theories are inconsistent with the holding in a prior decision of this Court." <u>Id.</u> at 786.

8    Thus, "even a strong case for relief does not mean the state court's contrary conclusion

9    was unreasonable." <u>Id.</u> (citing <u>Lockyer v. Andrade</u>, 538 U.S. at 75).  AEDPA "preserves

10   authority to issue the writ in cases where there is no possibility fairminded jurists could

11   disagree that the state court's decision conflicts with this Court's precedents." <u>Id.</u>  To put

12   it yet another way:

13          As a condition for obtaining habeas corpus relief from a federal
     court, a state prisoner must show that the state court's ruling on the claim
14   being presented in federal court was so lacking in justification that there
     was an error well understood and comprehended in existing law beyond
15   any possibility for fairminded disagreement.

16   <u>Id.</u> at 786-87.  The Court then explains the rationale for this rule, i.e., "that state courts

17   are the principal forum for asserting constitutional challenges to state convictions." <u>Id.</u> at

18   787. It follows from this consideration that § 2254(d) "complements the exhaustion

19   requirement and the doctrine of procedural bar to ensure that state proceedings are the

20   central process, not just a preliminary step for later federal habeas proceedings." <u>Id.</u>

21   (citing <u>Wainwright v. Sykes</u>, 433 U.S. 72, 90 (1977).

22           3.    <u>Prejudicial Impact of Constitutional Error</u>

23       The prejudicial impact of any constitutional error is assessed by asking whether

24   the error had "a substantial and injurious effect or influence in determining the jury's

25   verdict." <u>Brecht v. Abrahamson</u>, 507 U.S. 619, 623 (1993); <u>see also</u> <u>Fry v. Pliler</u>, 551

26   U.S. 112, 121-22 (2007) (holding that the <u>Brecht</u> standard applies whether or not the

27   state court recognized the error and reviewed it for harmlessness).  Some constitutional

28   errors, however, do not require that the petitioner demonstrate prejudice.  <u>See</u> <u>Arizona v.</u>

1  Fulminante, 499 U.S. 279, 310 (1991); United States v. Cronic, 466 U.S. 648, 659

2  (1984).  Furthermore, where a habeas petition governed by AEDPA alleges ineffective

3  assistance of counsel under Strickland v. Washington, 466 U.S. 668 (1984), the

4  Strickland prejudice standard is applied and courts do not engage in a separate analysis

5  applying the Brecht standard.  Avila v. Galaza, 297 F.3d 911, 918, n. 7 (2002).  Musalin

6  v. Lamarque, 555 F.3d at 834.

7  **IV.    REVIEW OF PETITION**

8       **A.    Claims 1 and 2 – Ineffective Assistance of Counsel**

9       Petitioner asserts that trial counsel was ineffective for failing to investigate

10  Petitioner's claims of self defense and improperly advised him to plea guilty.  (Pet.)

11             1.    Law Applicable to Ineffective Assistance of Counsel Claims

12       The law governing ineffective assistance of counsel claims is clearly established

13  for the purposes of the AEDPA deference standard set forth in 28 U.S.C. § 2254(d).

14  Canales v. Roe, 151 F.3d 1226, 1229 (9th Cir. 1998).  In a petition for writ of habeas

15  corpus alleging ineffective assistance of counsel, the Court must consider two factors.

16  Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); Lowry

17  v. Lewis, 21 F.3d 344, 346 (9th Cir. 1994).  First, the petitioner must show that counsel's

18  performance was deficient, requiring a showing that counsel made errors so serious that

19  he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment.

20  Strickland, 466 U.S. at 687.  The petitioner must show that counsel's representation fell

21  below an objective standard of reasonableness, and must identify counsel's alleged acts

22  or omissions that were not the result of reasonable professional judgment considering

23  the circumstances.  Id. at 688; United States v. Quintero-Barraza, 78 F.3d 1344, 1348

24  (9th Cir. 1995).  Judicial scrutiny of counsel's performance is highly deferential. A court

25  indulges a strong presumption that counsel's conduct falls within the wide range of

26  reasonable professional assistance.  Strickland, 466 U.S. at 687; see also, Harrington v.

27  Richter, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011).

28       Second, the petitioner must demonstrate that "there is a reasonable probability

7

1  that, but for counsel's unprofessional errors, the result ... would have been different."

2  Strickland, 466 U.S. at 694.  Petitioner must show that counsel's errors were "so serious

3  as to deprive defendant of a fair trial, a trial whose result is reliable."  Id. at 687.  The

4  Court must evaluate whether the entire trial was fundamentally unfair or unreliable

5  because of counsel's ineffectiveness.  Id.; Quintero-Barraza, 78 F.3d at 1348; United

6  States v. Palomba, 31 F.3d 1456, 1461 (9th Cir. 1994).

7       A court need not determine whether counsel's performance was deficient before

8  examining the prejudice suffered by the petitioner as a result of the alleged deficiencies.

9  Strickland, 466 U.S. at 697.  Since the defendant must affirmatively prove prejudice, any

10  deficiency that does not result in prejudice must necessarily fail.  However, there are

11  certain instances which are legally presumed to result in prejudice, e.g., where there has

12  been an actual or constructive denial of the assistance of counsel or where the State has

13  interfered with counsel's assistance.  Id. at 692; United States v. Cronic, 466 U.S., at

14  659, and n. 25 (1984).

15       As the Supreme Court reaffirmed recently in Harrington v. Richter, meeting the

16  standard for ineffective assistance of counsel in federal habeas is extremely difficult:

17       The pivotal question is whether the state court's application of the
Strickland standard was unreasonable. This is different from asking
18  whether defense counsel's performance fell below Strickland's standard.
Were that the inquiry, the analysis would be no different than if, for
19  example, this Court were adjudicating a Strickland claim on direct review
of a criminal conviction in a United States district court. Under AEDPA,
20  though, it is a necessary premise that the two questions are different. For
purposes of § 2254(d)(1), "an unreasonable application of federal law is
21  different from an incorrect application of federal law." Williams, supra, at
410, 120 S. Ct. 1495, 146 L. Ed. 2d 389. A state court must be granted a
22  deference and latitude that are not in operation when the case involves
review under the Strickland standard itself.
23
       A state court's determination that a claim lacks merit precludes
24  federal habeas relief so long as "fairminded jurists could disagree" on the
correctness of the state court's decision. Yarborough v. Alvarado, 541
25  U.S. 652, 664, 124 S. Ct. 2140, 158 L. Ed. 2d 938 (2004). And as this
Court has explained, "[E]valuating whether a rule application was
26  unreasonable requires considering the rule's specificity. The more general
the rule, the more leeway courts have in reaching outcomes in case-by-
27  case determinations." Ibid. "[I]t is not an unreasonable application of
clearly established Federal law for a state court to decline to apply a
28  specific legal rule that has not been squarely established by this Court."

1    <u>Knowles v. Mirzayance</u>, 556 U.S. 111, 129 S. Ct. 1411, 1419, 173 L. Ed. 2d 251, 261 (2009) (internal quotation marks omitted).

2    <u>Harrington v. Richter</u>, 131 S. Ct. at 785-86.

3    "It bears repeating that even a strong case for relief does not mean the state
4    court's contrary conclusion was unreasonable." <u>Id.</u> at 786. "As amended by AEDPA, §
5    2254(d) stops short of imposing a complete bar on federal court relitigation of claims
6    already rejected in state proceedings." <u>Id.</u> "As a condition for obtaining habeas corpus
7    from a federal court, a state prisoner must show that the state court's ruling on the claim
8    being presented in federal court was so lacking in justification that there was an error
9    well understood and comprehended in existing law beyond any possibility for fairminded
10   disagreement." <u>Id.</u> at 786-87.

11   Accordingly, even if Petitioner presents a strong case of ineffective assistance of
12   counsel, this Court may only grant relief if no fairminded jurist could agree on the
13   correctness of the state court decision.

14                      2.    <u>State Court Decision</u>

15   Petitioner presented his claim of ineffective assistance of counsel in his direct
16   appeal to the California Court of Appeal, Fifth Appellate District. The claim was denied in
17   a reasoned decision by the Court of Appeal and summarily denied in subsequent petition
18   for review by the California Supreme Court. (<u>See</u> Lodged Docs. 10-11.) Since the
19   California Supreme Court denied the petition in a summary manner, this Court "looks
20   through" the decisions and presumes the Supreme Court adopted the reasoning of the
21   Court of Appeal, the last state court to have issued a reasoned opinion. <u>See</u> <u>Ylst v.</u>
22   <u>Nunnemaker</u>, 501 U.S. 797, 804-05 & n.3 (1991) (establishing, on habeas review, "look
23   through" presumption that higher court agrees with lower court's reasoning where former
24   affirms latter without discussion); <u>see also</u> <u>LaJoie v. Thompson</u>, 217 F.3d 663, 669 n.7
25   (9th Cir. 2000) (holding federal courts look to last reasoned state court opinion in
26   determining whether state court's rejection of petitioner's claims was contrary to or an
27   unreasonable application of federal law under 28 U.S.C. § 2254(d)(1)).

28   In denying Petitioner's claim, the Court of Appeal explained that:

In appellant's earlier appeal, this court held the trial court erred "by failing to investigate, consider and rule on the ineffective assistance claim" raised by appellant at the hearing on the plea withdrawal motion, and by failing to "assess whether substitute counsel needed to be appointed for the sentencing hearing." This court noted that appellant asserted the victim "struck him first and he was protecting himself," and that the trial court "did not inquire into or rule on appellant's claim that [appellant's counsel, Marcus Olmos] failed to investigate alibi witnesses and did not consider the applicability of self-defense."

At the outset of the hearing on remand, on July 29, 2009, the trial court noted that this court had remanded the matter for a hearing "regarding [appellant's allegations of] ineffective assistance of counsel," and asked Olmos to "inform the [c]ourt" of the "preparations that [he] made in this case, what investigators [he] sent out, what those investigators found, and conversations [Olmos] had with [appellant]."

Olmos told the court that his investigator, Gary Fox, who was not present in court that day, had spoken with appellant, and that appellant told Fox the following: Appellant was attacked as he was walking his friend, Vanessa, to school; he was "taking the rap" for someone else, but he did not know who; and "he was supposed to meet his girlfriend, Jessica." Appellant asked Fox to find Jessica and Vanessa and talk to them about the case.

Olmos also stated that Fox "indicated … he was not aware of any additional alibi witnesses."

Olmos told the court that his other investigator, Denise Hulsey, was present in court, "but all she did was talk to [appellant] about the offer that the DA had made." Shortly thereafter, Hulsey, responding to questions from the court, stated that she "let [appellant] know [she] had not actively worked the case as an investigator" and "explained what the plea [offer] was." Appellant told her he "disagreed with the six-pack lineup because none of the other codefendants were in it."

Appellant confirmed that he believed Olmos "didn't do sufficient investigating." When asked if there was anything he wanted to add "to what has been said," appellant stated that Olmos "told me that they caught me on camera actually doing a crime scene." (Sic.) Appellant added, "That's what led me to take the plea bargain, to make me believe that I did the stabbing, that I was on camera." Olmos told the court that at the preliminary hearing, a police officer testified "there was a surveillance tape"; the tape "doesn't show the actual stabbing"; it does show appellant "chasing someone"; and it "appears [appellant] has something in his hand." Olmos stated he had not seen the tape. The court confirmed that there was no dispute appellant was at the scene of the stabbing, and told appellant, "Well, you were there ?. You're not disputing you were there. So even if there is a camera that shows you there, it doesn't show you doing the stabbing."

Next, appellant admitted that he confessed to the police that he attacked and stabbed the victim, but, he stated, his confession was false and he confessed only because the police "used physical abuse on me that day." He did not tell Olmos, or "anybody," about this.

The court asked, "What else?" Appellant responded that he "[tried] to subpoena other witnesses that were on [his] paperwork." One of these witnesses was "Rachel." Appellant "wanted her opinion."

At that point, the court adjourned. When the court reconvened six days later, investigator Gary Fox was present, and testified to the following: He discussed with appellant the confession appellant had made to police, and appellant "agreed that that was right." Fox and appellant discussed Jessica and Vanessa. Appellant "didn't want to … get [Vanessa] involved" and "wouldn't give her up." Fox was unable to locate Vanessa. Appellant did not know Jessica's telephone number or address. Fox telephoned Jessica's mother several times but the calls were not returned. He found an address for her and went there, but "nobody would answer the door." Fox tried to contact other witnesses, but they were all juveniles and "the parents wouldn't allow anybody to talk to them about it other than the District Attorney's [sic]."

The court asked appellant if there was anything he wanted to add. Appellant responded that he pled guilty because the police detectives "kept … pressuring [him] into it and all that." The court asked Fox if appellant stated he was pressured into confessing. Fox responded that appellant stated "he was told if he cooperated they would go easier on him," but "[t]hat was all that he gave me …."

Appellant then complained, "it wasn't a proper lineup … because the victim already seen it and they didn't do a proper lineup." (Sic.) The court asked if appellant had anything else to add. Appellant responded, "Not that I can think of right now."

At that point, the court reviewed, on the record, the transcript of the hearing at which appellant had entered his guilty plea, noting that appellant had confirmed, inter alia, the following: he had no "difficulty" understanding his attorney; his attorney had "advised [him] of the possible defenses [he] might have"; he was "satisfied with the services and advice of [his] attorney"; and he had not been "threatened … in any way." The court then ruled, "I'm going to deny his [Marsden] motion and his motion to withdraw his plea …."

## DISCUSSION

As indicated above, appellant contends the court erred in denying his Marsden and plea withdrawal motions because, he asserts, he was denied his right to the effective assistance of counsel and his plea was the product of his counsel's constitutionally deficient performance. His argument consists of multiple parts.

First, appellant contends his counsel, Marcus Olmos, told him that a surveillance tape depicted him stabbing the victim and running away with the knife in his hand, but his counsel's investigator, Denise Hulsey, told him he was "'not caught on tape.'" Appellant implies that Hulsey spoke truthfully and that Olmos falsely represented the contents of the tape and thereby "misled" appellant into pleading no contest. Both Olmos's and Hulsey's purported statements, however, are outside the record and therefore may not be considered on appeal. (People v. Barnett (1998) 17 Cal.4th 1044, 1183 [review on direct appeal limited to appellate record].)

11

Therefore, appellant has not established that Olmos misrepresented the content of the tape.

We recognize appellant stated at the hearing that Olmos told him about the content of the surveillance tape. However, he did not tell the court that Olmos misrepresented the content of the tape. Rather, as indicated above, appellant stated Olmos told him that he (appellant) had been "caught … on camera actually doing a crime scene." (Sic.) The court interpreted this statement, quite reasonably, as a claim that appellant was told the tape showed him at the scene of the stabbing, a fact that was not in dispute. Thus, at the hearing appellant did not make the assertion he makes on appeal, viz., that Olmos falsely told him the surveillance tape showed him stabbing the victim.

Appellant also argues that Olmos's statement at the hearing that he (Olmos) had not seen the surveillance tape establishes that Olmos's investigation was inadequate. There is no merit to this contention. In order to establish ineffective assistance of counsel based on an alleged failure to investigate, a defendant "must prove that counsel failed to make particular investigations and that the omissions resulted in the denial of or inadequate presentation of a potentially meritorious defense." (In re Sixto (1989) 48 Cal.3d 1247, 1257.) Appellant fails to meet this burden because there is nothing in the record that suggests that the surveillance tape could have provided him with a meritorious defense.

Next appellant argues that his confession to the police was "physically coerced by the detectives," and that Olmos was constitutionally ineffective by failing to move to suppress the confession on that basis. However, at the hearing below, appellant's claim that his confession was the product of physical coercion was contradicted by Fox's testimony that appellant stated the police indicated it would be "easier on him" if he "cooperated," and that appellant said nothing about physical coercion. Moreover, appellant admitted he did not tell Olmos or anybody else that he had been physically coerced into confessing. Under these circumstances, Olmos's failure to move to suppress the confession was entirely reasonable, and therefore did not constitute ineffective assistance of counsel. (People v. Gamache (2010) 48 Cal.4th 347, 391 [to establish ineffective assistance of counsel defendant must show "'counsel's representation fell below an objective standard of reasonableness under prevailing professional norms'"].)

Next, appellant challenges the denial of his plea withdrawal motion on the ground that he entered his plea because he was "overcome[]" by Olmos's "lack of confidence" and "persistence" in trying to persuade appellant to plead no contest. This contention too is without merit.

Under section 1018, the trial court may, on a showing of good cause, allow a defendant to withdraw a plea of guilty or no contest. The defendant has the burden of establishing good cause by clear and convincing evidence. (People v. Wharton (1991) 53 Cal.3d 522, 585.) To establish good cause, the defendant must show that the plea was the product of "mistake, ignorance, fraud, duress or any other factor that overcomes the exercise of free judgment." (People v. Ravaux (2006) 142 Cal.App.4th 914, 917.) Based on appellant's statements at the time of his plea, the court reasonably concluded that the exercise of appellant's free judgment was not overcome by duress or any other factor.

Appellant next argues that "3 or 4" persons would have testified that he did not stab the victim and the person who did the stabbing was taller than appellant, and that he was denied his right to the effective assistance of counsel because Olmos failed to "question" and subpoena these persons. However, there is nothing in the record that indicates such witnesses exist. Therefore, we may not consider this claim. (People v. Barnett, supra, 17 Cal.4th at p. 1183.)

Finally, appellant argues that he was identified at a "lineup"; he was the only suspect in the lineup; he was "refused counsel during this lineup"; and therefore the lineup was "suggestive" and "unconstitutional." Appellant suggests Olmos provided constitutionally deficient representation by failing to challenge the identification made at this lineup.

At appellant's preliminary hearing, the prosecution presented evidence that shortly after the stabbing, police transported two persons to the restaurant parking lot where appellant was being detained in a police car, and that upon viewing appellant there, identified him as the person who stabbed the victim. Appellant apparently bases his challenge to the constitutionality of what he terms as a lineup on these identifications. However, this type of identification, commonly called a single-person showup, "is not necessarily unfair." (People v. Cowger (1988) 202 Cal.App.3d 1066, 1071.) "[E]ach case must be assessed in the light of the totality of the circumstances. [Citations.] The potential unfairness in singling out a suspect is offset by the likelihood that a prompt identification shortly after the commission of a crime will be more accurate than a belated identification days or weeks later. [Citations.]" (Ibid.) "A defendant who claims an unnecessarily suggestive pretrial identification bears the burden of showing it gave rise to 'a very substantial likelihood of irreparable misidentification.'" (Id. at p. 1072.) There is nothing in the record to suggest that appellant could meet this burden. Therefore, counsel was not ineffective by failing to raise a constitutional challenge to the showup identifications.

Following independent review of the record, we have concluded that no reasonably arguable legal or factual issues exist.

People v. Almeida, 2010 Cal. App. Unpub. LEXIS 5061, 9-15 (Cal. App. 5th Dist. July 2, 2010).

On November 30, 2011, Petitioner filed a petition for writ of habeas corpus in the Court of Appeal raising the same ineffective-assistance-of-counsel claims that formed the basis for his attack on the trial court's ruling on his Marsden motion. (Lodged Doc. 16.) The Court of Appeal rejected his claims as follows:

Insofar as petitioner claims that his nolo contendere plea was the result of a misrepresentation by counsel that the surveillance video showed petitioner stabbing the victim, petitioner has failed to explain the circumstances which substantially undermine his credibility. For example, this court's opinion on People v. Almeida, July 2, 2010, F058592, (Almeida) indicates that petitioner had been informed at the preliminary

13

1   hearing and by Dennis Hulsey that the video did not show petitioner
    stabbing the victim. Petitioner does not deny that he was so informed.
2   Petitioner has failed to explain how we could rely upon counsel's alleged
    misrepresentation when he knew it was contradicted. That opinion also
3   indicates that petitioner at the evidentiary hearing in superior court did not
    inform the court of the alleged misrepresentation. Petitioner has failed to
4   explain why he did not raise that issue at the hearing. Finally, petitioner
    has failed to describe specifically what counsel told him about the contents
5   of the surveillance video to show that petitioner's interpretation was not
    merely a misunderstanding of what counsel told him.

6       Insofar as petitioner claims trial counsel has made inconsistent
    responses regarding what he told petitioner, petitioner has failed to explain
7   why those inconsistencies are significant in light of the fact that the opinion
    in Almeida, supra, indicates that it was uncontradicted that petitioner was
8   present at the school at around the time of stabbing.

9       Insofar as petitioner complains that trail counsel failed to investigate
    eyewitnesses, petitioner's claims are conclusional. Petitioner has failed to
10  establish that he had any personal and specific information supporting his
    conclusional assertion.
11
        Insofar as petitioner complains that trial counsel did not file a
12  motion to suppress the witnesses' identifications, petitioner has failed to
    address the reasons given in the Almeida, supra, case why such
13  challenges would not have made a different result reasonably probable.

14      Insofar as petitioner claims counsel was ineffective in failing to
    move to suppress his confession, petitioner's assertion that the
15  interrogators used "physical and verbal violence" is completely
    conclusional. It follows that petitioner failed to show that such a motion
16  had any possibility of success.

17  (Lodged Doc. 17 at 1-2.)

18          3.   <u>Analysis</u>

19      Here, providing the state court decisions with appropriate deference for

20  Petitioner's contentions, there is at least a possibility that fair-minded jurists could agree

21  with the state court decision that Petitioner was not prejudiced by counsel's conduct.

22      To demonstrate ineffective assistance of counsel in the context of a challenge to a

23  guilty plea, a habeas petitioner must show both that counsel's advice fell below an

24  objective standard of reasonableness as well as a "reasonable probability" that, but for

25  counsel's errors, the petitioner would not have pleaded guilty and would have insisted on

26  going to trial. <u>Hill v. Lockhart</u>, 474 U.S. at 58-59 (holding that the two-part test of

27  Strickland v. Washington applies to challenges to guilty pleas based on the ineffective

28  assistance of counsel); <u>Missouri v. Frye</u>,     U.S.    , 132 S.Ct. 1399, 1405, 182 L. Ed. 2d

1  379 (2012) (reaffirming that Hill is properly applied to claims of ineffective assistance of

2  counsel in the context of acceptance of a plea bargain); Padilla v. Kentucky, 559 U.S.

3  356, 130 S.Ct. 1473, 1485, 176 L. Ed. 2d 284 (2010) (stating that to obtain relief on this

4  type of claim, a petitioner must convince the court that a decision to reject the plea

5  bargain would have been rational under the circumstances).

6      With regard to the videotape evidence, the state court found that despite his

7  assertions otherwise, Petitioner was informed that the videotape did not show him

8  stabbing the victim. Furthermore, the Court notes that even if the videotape did not

9  depict the crime, the fact that the tape placed Petitioner at the scene of the crime made

10  the videotape a strong piece of evidence implicating Petitioner's guilt. Likewise,

11  Petitioner contends that had counsel properly investigated the matter, he would not have

12  plead guilty. The state court found the claims relating to the failure to investigate

13  conclusional, and this Court agrees. Petitioner states without any supporting factual

14  assertions that if counsel had followed leads and interviewed eyewitnesses, there would

15  have been a reasonable probability that Petitioner would have been found innocent or

16  doubt as to Petitioner's guilt would have been raised. Petitioner fails to provide any

17  factual support to show that new or different exculpatory evidence could have been

18  presented that would have changed the result of a trial, had he not plead guilty.

19  Providing the state court decisions with the appropriate deference, it is reasonable that

20  the state court denied the claims based on Petitioner's failure to show that there was a

21  reasonable probably that further investigation would have led to exculpatory evidence

22  that would have caused Petitioner to not plead guilty.

23      In light of the doubly deferential standard on federal habeas review, it is not

24  possible to find that the state court decision was unreasonable. While Petitioner could

25  have proceeded to trial to attempt to present his alleged defenses, Petitioner has not

26  met his burden of showing that there was a "reasonable probability that... the result ...

27  would have been different." Strickland, 466 U.S. at 694. Fairminded jurists could

28  therefore disagree with the correctness of the state court decision that counsel's failure

1    to further investigate Petitioner's alleged defenses and to recommend that Petitioner

2    plead guilty was unreasonable. Petitioner's claims of ineffective assistance of counsel

3    claims are without merit.

4    **B.    Claims 3 and 4 – Procedural Bars**

5        Respondent asserts that the third and fourth claims set forth in the petition are

6    subject to procedural default. Petitioner presented his third claim regarding involuntary

7    confession and his fourth claim regarding an unconstitutionally suggestive lineup in the

8    same petition for writ of habeas corpus the California Supreme Court. (Lodged Doc. 24.)

9        In its decision, the California Supreme Court denied the petition based on a state

10   procedural bar. The court addressed Petitioner's claims as follows:

11       The petition for writ of habeas corpus is denied. (See In re Clark (1993) 5
         Cal.4th 750, 767-769; People v. Duvall (1995) 9 Cal.4th 464, 474; In re
12       Dixon (1953) 41 Cal.2d 756, 759; In re Swain (1949) 34 Cal.2d 300, 304.)

13   (Lodged Doc. 25.)

14       Based on the cases cited by the California Supreme Court, it appears that the

15   Court found the claims procedurally barred as successive and for failure to raise the

16   claims on direct appeal. The Court shall describe the procedural bars in turn.

17       1.    Legal Framework for Procedural Default

18       The Supreme Court recently described the legal requirements that prevent review

19   of claims that were rejected on state court grounds:

20       "A federal habeas court will not review a claim rejected by a state
         court 'if the decision of [the state] court rests on a state law ground that is
21       independent of the federal question and adequate to support the
         judgment.' " Kindler, 558 U.S., at 55, 130 S.Ct., at 615 (quoting Coleman
22       v. Thompson, 501 U.S. 722, 729, 111 S.Ct. 2546, 115 L.Ed.2d 640
         (1991)). The state-law ground may be a substantive rule dispositive of the
23       case, or a procedural barrier to adjudication of the claim on the merits.
         See Sykes, 433 U.S., at 81-82, 90, 97 S.Ct. 2497.
24
         ***
25
         To qualify as an "adequate" procedural ground, a state rule must be
26       "firmly established and regularly followed." Kindler, 558 U.S., at 60, 130
         S.Ct., at 618 (internal quotation marks omitted). FN4 [omitted] "[A]
27       discretionary state procedural rule," we held in Kindler, "can serve as an
         adequate ground to bar federal habeas review." Ibid. A "rule can be 'firmly
28       established' and 'regularly followed,'" Kindler observed, "even if the

1
2
3
4
5
6

appropriate exercise of discretion may permit consideration of a federal claim in some cases but not others." Ibid. California's time rule, although discretionary, meets the "firmly established" criterion, as Kindler comprehended that requirement. The California Supreme Court, as earlier noted, framed the timeliness requirement for habeas petitioners in a trilogy of cases. See supra, at 3 [citing Clark, Robbins, and In re Gallego, 18 Cal. 4th 825, 77 Cal. Rptr. 2d 132, 959 P.2d 290 (1998). Those decisions instruct habeas petitioners to "alleg[e] with specificity" the absence of substantial delay, good cause for delay, or eligibility for one of four exceptions to the time bar. Gallego, 18 Cal. 4th, at 838, 77 Cal. Rptr. 2d 132, 959 P.2d, at 299; see Robbins, 18 Cal. 4th, at 780, 77 Cal. Rptr. 2d 153, 959 P.2d, at 317.

7   Walker v. Martin,      U.S.    , 131 S. Ct. 1120, 1127-1128, 179 L. Ed. 2d 62 (2011)

8   (abrogating Townsend v. Knowles, 562 F.3d 1200 (9th Cir. 2009)).

9                            a.   Successive Bar

10   Here, the California Supreme Court raised a procedural bar based on it being a

11   successive petition, i.e., a Clark bar. In addition to the substantive law regarding

12   procedural default, the Ninth Circuit has constructed a procedural process for invocation

13   of the bar. First, a respondent must expressly invoke the bar. Second, a petitioner must

14   articulate specific reasons why he believes the bar to be invalid under federal procedural

15   default law. An exception to this specific articulation is the situation where the Ninth

16   Circuit has previously held the bar to be inadequate, or not clearly established or

17   regularly followed; in this situation all a petitioner need do is object to the invocation of

18   the bar. If petitioner meets his burden, respondent then has the ultimate burden of

19   proving the legitimacy of the bar. See Bennett v. Mueller, 322 F.3d 573 (9th Cir. 2003);

20   King v. LaMarque, 464 F.3d 963, 967-68 (9th Cir. 2006).

21   In this case, Respondent did invoke the bar of successive petition, Answer at 16-

22   19, and it is clear that the successive petition bar applies to Petitioner's third and fourth

23   claims. While claim specific bars must be unambiguously invoked for the specific claim

24   to be defaulted, Chambers v. McDaniel, 549 F.3d 1191, 1197 (9th Cir. 2008), a

25   successive petition, by definition, references all claims contained within—whether the

26   second petition contains repeated or new claims.

27   While the Ninth Circuit has previously refused to legitimize the Clark timeliness

28   procedural bar, there is no such case law regarding successive petitions. See Stancle v.

1  <u>Clay</u>, 692 F.3d 948, 957 (9th Cir. 2012): "We agree that California courts do not

2  generally review unjustified successive petitions. <u>See</u> <u>In re Morgan</u>, 50 Cal.4th 932, 114

3  Cal.Rptr.3d 591, 237 P.3d 993, 1001 (2010) (Corrigan, J., concurring and dissenting); <u>In</u>

4  <u>re Clark</u>, 5 Cal.4th 750, 21 Cal.Rptr.2d 509, 855 P.2d 729, 740-42 (1993)." <u>See also</u>

5  <u>Siripongs v. Calderon</u>, 35 F.3d 1308, 1318 (9th Cir. 1994) (concluding that before <u>Clark</u>,

6  California's successive petition rules were not adequate and independent).

7       Moreover, one could reasonably argue, and the undersigned so finds, that the

8  Supreme Court's disavowal of the Ninth's Circuit's objections to invocation of <u>Clark</u> in the

9  timeliness context also stood to disavow any objection to the related, successive petition

10 bar. After <u>Martin</u>, Petitioner would have the burden of specific articulation of reasons why

11 the successive petition bar could not be applied to his case.

12      In any event, Petitioner, in his traverse, did not object to the invocation of the bar,

13 much less provide a specific articulation why the bar could not be applied. (<u>See</u>

14 Traverse, at 19-21.[1]) Therefore, Respondent does not bear the burden of validating the

15 bar. Claims three and four are defaulted as successive.

16                     b.      Failure to Raise Claims on Direct Review

17      Claims three and four are also potentially procedurally barred by the California

18 Supreme Court's decisions to deny state habeas review because the claims were not

19 raised on direct review.

20      Here, the California Supreme Court applied the <u>Dixon</u> rule to deny the claims in

21 the petition. <u>Dixon</u> states that:

22      [t]he general rule is that habeas corpus cannot serve as a substitute for an
       appeal, and, in the absence of special circumstances constituting an
23      excuse for failure to employ that remedy, the writ will not lie where the
       claims errors could have been, but were not, raised upon a timely appeal
24      from the judgment of conviction.

25 41 Cal. 2d at 759. Thus, pursuant to <u>Dixon</u>, a California court will not review the merits of

26 a claim in a state habeas proceeding if it could have been raised in a timely appeal but

27 _____

       [1] However, Petitioner claims that he qualifies for the exceptions to the procedural bar, as
28 discussed below.

1  was not. However, the question arises whether the Dixon rule is an adequate and

2  independent state rule to serve as a procedural bar.

3  1.  Is the Dixon Rule Adequate?

4  The Supreme Court explained that "a discretionary rule can serve as an adequate

5  ground to bar federal habeas review," and that a rule may be adequate "even if the

6  appropriate exercise of discretion may permit consideration of a federal claim in some

7  cases but not others." Beard v. Kindler, 130 S. Ct. 612, 618 (2009); see also Martin, 131

8  S. Ct. at 1128-29. As the Supreme Court recently observed in Martin, 131 S. Ct. at 1130,

9  "[d]iscretion enables a court to home in on case-specific considerations and to avoid the

10  harsh results that sometimes attend consistent application of an unyielding rule." Such

11  discretion is applicable to the Dixon rule because a state court may find that special

12  circumstances excuse a petitioner's failure to raise a ground on appeal. See, e.g.,

13  Fleeman v. Castro, 2009 U.S. Dist. LEXIS 1278, 2009 WL 33241, at *7 (E.D. Cal. Jan. 6,

14  2009) (the Dixon rule is "discretionary in that it admits of the possibility of exceptions for

15  'special circumstances constituting an excuse' for failure to raise a claim by way of direct

16  appeal and when such circumstances are found, the California Supreme Court may

17  entertain the claim"); Jones v. Ayers, 2008 U.S. Dist. LEXIS 26772, 2008 WL 906302, at

18  *28 (E.D. Cal. Mar. 31, 2008) (finding the Dixon rule to be discretionary because, as set

19  forth in Park, 202 F.3d at 1152, the California Supreme Court explained in Harris that

20  exceptions are applicable to the Dixon rule that admit the possibility that the California

21  Supreme Court may entertain a claim not raised on direct appeal). Accordingly, the

22  Court may look to the Supreme Court's recent decision in Martin for guidance in

23  evaluating the adequacy of the state courts' application of the Dixon rule. See, e.g., Lee

24  v. Mitchell, 2012 U.S. Dist. LEXIS 83503 (C.D. Cal. May 1, 2012); Jensen v. Hernandez,

25  2012 U.S. Dist. LEXIS 45673, 2012 WL 1130599, at *11-12 (E.D. Cal. Mar. 30, 2012)

26  (citing Martin in considering, in part, a Dixon bar); Peyton v. Lopez, 2012 U.S. Dist.

27  LEXIS 50350, 2012 WL 1203484, at *7 (C.D. Cal. Feb. 22, 2012) (same).

28  Second, to be "adequate," the procedural rule in question must be "firmly

1   established and regularly followed." Martin, 131 S.Ct. at 1127 (citing Kindler, 130 S.Ct. at

2   618). "In determining the adequacy of the procedural bar, state cases applying the

3   procedural bar after the time of the petitioner's default are irrelevant." Bennett v. Mueller,

4   364 F. Supp. 2d 1160, 1167 (C.D. Cal. 2005). Here, Petitioner has not presented

5   evidence regarding the regular application of the procedural bar either before or after

6   filing his petition.

7          The United States Supreme Court has made it clear that a state procedural rule

8   can serve as an adequate bar to federal habeas review "even if the appropriate exercise

9   of discretion may permit consideration of a federal claim in some cases but not others."

10  Kindler, 130 S. Ct. at 618; see also Martin, 131 S. Ct. at 1128, 1129 ("We see no reason

11  to reject California's time bar simply because a court may opt to bypass the

12  [untimeliness] assessment and summarily dismiss a petition on the merits, if that is the

13  easier path."). Moreover, as Judge Kozinski recently noted, there is no "existing Ninth

14  Circuit precedent holding that the Dixon rule is inadequate." Cree v. Sisto, 2011 U.S.

15  Dist. LEXIS 3648, 2011 WL 66253, at *2 (E.D. Cal. Jan 7, 2011) (Kozinski, J., sitting by

16  designation).

17         The Court finds that the evidence reflects that the Dixon rule was well established

18  and regularly followed in the time leading up to Petitioner's default.

19                              2.      Is the Dixon Rule an Independent State Ground?

20         Prior to 1998, the Dixon rule was determined to not be independent of federal law.

21  Park v. California, 202 F.3d 1146, 1152-53 (9th Cir. 2000). In Park, the Ninth Circuit

22  reasoned that application of the Dixon rule necessarily was interwoven with federal law

23  because there was a fundamental constitutional error exception to the Dixon rule under

24  state law. See id. at 1152-53. However, in In re Robbins, 18 Cal. 4th 770 (1998), the

25  California Supreme Court held "that henceforth California courts would no longer

26  determine whether an error alleged in a state petition constituted a federal constitutional

27  violation." See Bennett, 322 F.3d at 581. In Bennett, the Ninth Circuit held, "we respect

28  the California Supreme Court's sovereign right to interpret its state constitution

1    independent of federal law" and, as a result found California untimeliness rule was

2    independent. See id. at 581-83. Thus, under these particular circumstances, the

3    California Supreme Court's invocation of Dixon after Robbins was decided would also be

4    an independent state ground. See id. at 582-83; see also Park, 202 F.3d at 1153 n. 4

5    (9th Cir. 2000). See Cree v. Sisto, Civ. No. 08-487, 2011 U.S. Dist. LEXIS 3648, 2011

6    WL 66253, at *2 (E.D. Cal. Jan 7, 2011) (Kozinski, J., sitting by designation); see also

7    Rhodes v. Uribe, 2012 U.S. Dist. LEXIS 36921, 2012 WL 928434, at *4 (C.D. Cal. Feb.

8    10, 2012) (finding that the Dixon rule was independent and adequate); Cantrell v. Evans,

9    2010 U.S. Dist. LEXIS 35955, 2010 WL 1170063, at *13-14 (E.D. Cal. Mar. 23, 2010)

10   (same) (McKeown, J., sitting by designation); Lee v. Mitchell, 2012 U.S. Dist. LEXIS

11   83503 (C.D. Cal. May 1, 2012) (same).

12        As the Dixon rule is an independent and adequate state ground, the petition is

13   deemed procedurally defaulted unless Petitioner can show cause for the default and

14   actual prejudice as a result of the alleged violation of federal law or that failure to

15   consider the claims will result in a fundamental miscarriage of justice. See Coleman, 501

16   U.S. at 750.

17                 2.     Reasons to Overcome Procedural Default

18        Even when a federal claim has been procedurally defaulted, "[t]he bar to federal

19   review may be lifted, if 'the prisoner can demonstrate cause for the [procedural] default

20   [in state court] and actual prejudice as a result of the alleged violation of federal law.' "

21   Maples v. Thomas, 132 S.Ct. 912, 922, 181 L. Ed. 2d 807 (2012) (quoting Coleman, 501

22   U.S. at 750, 746-47); see also Schneider v. McDaniel, 674 F.3d 1144, 1153 (9th Cir.

23   2012). Adequate "cause" for a default must be an "external" factor that cannot fairly be

24   attributed to the petitioner. Coleman, 501 US. at 753.

25                 a.     Cause

26        In Coleman, the court noted that attorney error which rises to the level of

27   ineffective assistance of counsel is considered "cause" within the meaning of this rule.

28   Coleman, 501 U.S. at 753-54. This is because a defendant has a right to effective

21

assistance of counsel under the Sixth Amendment, and a violation of that must be seen as an external factor, and thus the error must be imputed to the state. Id.; Murray, 477 U.S. at 488. Here, Petitioner has not alleged a Sixth Amendment right to effective counsel. Instead, Petitioner claims that a cause for the default was the fact that he has difficulty reading, writing, and understanding legal rules and procedures. (See Traverse, Ex. 4.) However, the Ninth Circuit in Schneider v. McDaniel, 674 F.3d 1144, 1153-1154 (9th Cir. 2012), explained that neither illiteracy nor mental competency usually serve as a cause of a procedural default. The Court explained as follows:

> Schneider's argument is foreclosed by Hughes v. Idaho State Board of Corrections, where we confirmed that the cause and prejudice standard applies to a pro se petitioner's procedural default. 800 F.2d 905, 908 (9th Cir. 1986). In that case, the petitioner did not establish cause for his default in failing to appeal the denial of his state petition for postconviction relief where that default resulted from his illiteracy and the loss of legal assistance by another inmate. Id. at 909. We reasoned, When a pro se petitioner is able to apply for postconviction relief to a state court, the petitioner must be held accountable for failure to timely pursue his remedy to the state supreme court. To hold that illiteracy is a legitimate cause for failing to appeal to the state supreme court would allow petitioners to wait until the jurisdictional period lapsed and then proceed directly to federal court. Such a result would be contrary to the principles of comity underlying the cause and prejudice rule.Id.

> We developed this principle further in Tacho v. Martinez, 862 F.2d 1376 (9th Cir. 1988). In that case, the state court denied a claim in the petitioner's third state petition for postconviction relief on the ground that he had failed to raise the claim on direct appeal or in his two prior post-conviction petitions. Id. at 1378. Tacho alleged that he had been diagnosed as "borderline mental defective," and argued that his mental condition excused his procedural default. Id. at 1381. Relying on Hughes, 800 F.2d at 909, we rejected his argument:

>> While Tacho's mental condition may or may not be a more serious infirmity than Hughes' illiteracy, Tacho, unlike Hughes, has had help from other inmates. Tacho has, in fact, had an attorney for all of his post-conviction petitions except the one raising the claim involved in the instant petition. If an illiterate petitioner's complete lack of assistance is not cause to excuse a procedural default, it necessarily follows that a literate pro se petitioner who has had such assistance cannot establish cause.

> Tacho, 862 F.2d at 1381.

> The legal principle that we distill from Hughes and Tacho is that a pro se petitioner's mental condition cannot serve as cause for a procedural default, at least when the petitioner on his own or with assistance remains

"able to apply for post-conviction relief to a state court." <u>Hughes</u>, 800 F.2d at 909; <u>see also</u> <u>Tacho</u>, 862 F.2d at 1381. <u>Hughes</u> and <u>Tacho</u> do not necessarily foreclose the possibility that a pro se petitioner might demonstrate cause in a situation where a mental condition rendered the petitioner completely unable to comply with a state's procedures and he had no assistance. But they do prevent us from excusing a procedural default where a mental defect had less of an adverse effect on the petitioner's ability to comply with state procedures than illiteracy would have had.

<u>Schneider v. McDaniel</u>, 674 F.3d 1144, 1153-1154 (9th Cir. 2012).

Based on the relevant Ninth Circuit caselaw, Petitioner's claims of illiteracy and lack of knowledge of the law are not sufficient to serve as a cause of a procedural default. Petitioner has not shown that he was completely unable to comply with the state procedures without assistance. Petitioner's basis for excusing procedural default is not sufficient.

　　　　　　　　　　b.　　Prejudice

Prejudice is a required element for Petitioner to overcome a procedural bar. In order to establish prejudice to overcome a procedural default, Petitioner must show "not merely that the errors at his trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." <u>See</u> <u>United States v. Frady</u>, 456 U.S. 152, 170, 102 S. Ct. 1584, 71 L. Ed. 2d 816 (1982) (discussing prejudice where defendant failed to object to jury instructions in proceeding under 28 U.S.C. § 2255); <u>Schneider v. McDaniel</u>, 674 F.3d 1144, 1153 (9th Cir. 2012). "Prejudice [to excuse a procedural default] is actual harm resulting from the alleged error." <u>Vickers v. Stewart</u>, 144 F.3d 613, 617 (9th Cir. 1998).

Here, Petitioner claims that his confession was coerced through physical assault. However, Petitioner did not raise this issue earlier, such as on direct appeal or at trial, and does not claim that counsel was ineffective for not attempting to raise the issue earlier. As the claim is not developed, the Court finds it is not a basis for showing prejudice.

Petitioner also asserts that the police lineup was unduly suggestive. With regard

to identification procedures, due process concerns arise only when law enforcement officers use an identification procedure that is both suggestive and unnecessary." Perry v. New Hampshire, 132 S. Ct. 716, 724, 181 L. Ed. 2d 694 (2012) (citations omitted). "Even when the police use such a procedure, suppression of the resulting identification is not the inevitable consequence." Id. A two-part analysis is used to evaluate whether an in-court identification has been irreparably tainted by an impermissibly suggestive pretrial identification procedure in violation of due process. Green v. Loggins, 614 F.2d 219, 223 (9th Cir. 1980). The first step is to determine whether the pretrial identification was unduly suggestive. Simmons v. United States, 390 U.S. 377, 384 (1968); Green, 614 F.2d at 223. Even if the identification procedure was unduly suggestive, the second step requires a determination of whether the totality of the circumstances surrounding the eyewitness's identification indicates that the identification was nonetheless reliable. Neil v. Biggers, 409 U.S. 188, 199, 93 S. Ct. 375, 34 L. Ed. 2d 401 (1972); Simmons, 390 U.S. at 383. Factors considered in assessing reliability include: (1) the opportunity to view the criminal at the time of the crime; (2) the witness's degree of attention (including any police training); (3) the accuracy of the prior description; (4) the witness's level of certainty at the confrontation; and (5) the length of time between the crime and the identification. Biggers, 409 U.S. at 199-200; Manson v. Brathwaite, 432 U.S. at 114. Where "the indicia of reliability are strong enough to outweigh the corrupting effect of the police-arranged suggestive circumstances, the identification evidence ordinarily will be admitted, and the jury will ultimately determine its worth." Perry, 132 S.Ct. at 720.

Plaintiff cannot establish prejudice for the claim as he has not shown that even if the identification procedure was unduly suggestive, that the identification was nonetheless unreliable. Given the safeguards generally applicable in criminal trials, it is unlikely that Petitioner could show that the line-up made his trial unfair. Perry v. New Hampshire, 132 S. Ct. 716, 730 (2012). Petitioner presents evidence that during the cross-examination of the eye-witnesses, several of the witness were no longer able to identify Petitioner as the person who committed the stabbing. (Traverse, Ex. 6.) As

1   Petitioner was able to cross-examine and attack the credibility of the witnesses, it is not

2   likely that his claim of an unduly suggestive lineup was meritorious, and he was not

3   prejudiced by counsel's failure to preserve and raise the issue on appeal.

4                             c.      Miscarriage of Justice

5          Finally, Petitioner can avoid a procedural default if he can demonstrate that a

6   fundamental miscarriage of justice would result from the default. The United States

7   Supreme Court has limited the "miscarriage of justice" exception to petitioners who can

8   show that "a constitutional violation has probably resulted in the conviction of one who is

9   actually innocent." Schlup v. Delo, 513 U.S. 298, 327, 115 S. Ct. 851, 130 L. Ed. 2d 808

10  (1995). "In order to pass through Schlup's gateway, and have an otherwise barred

11  constitutional claim heard on the merits, a petitioner must show that, in light of all the

12  evidence, including evidence not introduced at trial, "it is more likely than not that no

13  reasonable juror would have found petitioner guilty beyond a reasonable doubt.'" Majoy

14  v. Roe, 296 F.3d 770, 775-76 (9th Cir. 2002), quoting Schlup, 513 U.S. at 327. In

15  applying this standard, "A petitioner need not show that he is "actually innocent' of the

16  crime he was convicted of committing; instead, he must show that ""a court cannot have

17  confidence in the outcome of the trial.'" Majoy, 296 F.3d at 776, quoting Carriger v.

18  Stewart, 132 F.3d 463, 478 (9th Cir. 1987) (en banc), quoting Schlup, 513 U.S. at 316.

19         Petitioner has not presented any credible evidence to undermine the factual

20  assertions that form the basis of his convictions. Without presenting reliable, credible

21  evidence of his innocence, Petitioner has not made a sufficient showing of actual

22  innocence to serve as an equitable exception to procedural default. Schlup, 513 U.S. at

23  324 ("To be credible, such a claim requires petitioner to support his allegations of

24  constitutional error with new reliable evidence — whether it be exculpatory scientific

25  evidence, trustworthy eyewitness accounts, or critical physical evidence — that was not

26  presented at trial. Because such evidence is obviously unavailable in the vast majority of

27  cases, claims of actual innocence are rarely successful.") Petitioner has not shown that it

28  is more likely than not that no reasonable juror would have found him guilty beyond a

1    reasonable doubt had counsel objected to his confession or identification evidence. Id. at

2    314-15. Accordingly, Petitioner is procedurally barred from presenting his third and fourth

3    claims.

4    **V.    CONCLUSION**

5          Petitioner is not entitled to relief with regard to the claims presented in the instant

6    petition. The Court therefore orders that the petition be DENIED.

7    **VI.    CERTIFICATE OF APPEALABILITY**

8          A state prisoner seeking a writ of habeas corpus has no absolute entitlement to

9    appeal a district court's denial of his petition, and an appeal is only allowed in certain

10   circumstances. Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003). The controlling statute

11   in determining whether to issue a certificate of appealability is 28 U.S.C. § 2253, which

12   provides as follows:

13         (a) In a habeas corpus proceeding or a proceeding under section 2255
14         before a district judge, the final order shall be subject to review, on appeal,
           by the court of appeals for the circuit in which the proceeding is held.

15         (b) There shall be no right of appeal from a final order in a proceeding to
16         test the validity of a warrant to remove to another district or place for
           commitment or trial a person charged with a criminal offense against the
17         United States, or to test the validity of such person's detention pending
           removal proceedings.

18         (c)    (1) Unless a circuit justice or judge issues a certificate of
19         appealability, an appeal may not be taken to the court of appeals from–

20               (A) the final order in a habeas corpus
                 proceeding in which the detention complained
21               of arises out of process issued by a State
                 court; or

22               (B) the final order in a proceeding under
                 section 2255.
23
           (2) A certificate of appealability may issue under paragraph
24         (1) only if the applicant has made a substantial showing of
           the denial of a constitutional right.
25
           (3) The certificate of appealability under paragraph (1) shall
26         indicate which specific issue or issues satisfy the showing
           required by paragraph (2).
27
           If a court denies a petitioner's petition, the court may only issue a certificate of
28

26

appealability "if jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." <u>Miller-El</u>, 537 U.S. at 327; <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000).  While the petitioner is not required to prove the merits of his case, he must demonstrate "something more than the absence of frivolity or the existence of mere good faith on his . . . part." <u>Miller-El</u>, 537 U.S. at 338.

In the present case, the Court finds that no reasonable jurist would find the Court's determination that Petitioner is not entitled to federal habeas corpus relief wrong or debatable, nor would a reasonable jurist find Petitioner deserving of encouragement to proceed further.  Petitioner has not made the required substantial showing of the denial of a constitutional right.  Accordingly, the Court hereby DECLINES to issue a certificate of appealability.

### ORDER

Accordingly, IT IS HEREBY ORDERED:

1) The petition for writ of habeas corpus is DENIED;

2) The Clerk of Court is DIRECTED to enter judgment and close the case; and

3) The Court DECLINES to issue a certificate of appealability.

IT IS SO ORDERED.

Dated:   July 1, 2014          /s/ *Michael J. Seng*

UNITED STATES MAGISTRATE JUDGE

27